# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# MEDFORD DIVISION

**UNITED STATES OF AMERICA,**

        Plaintiff,

        v.

**NATHANAEL JAMES YOUNG**,

        Defendant.

No. 1:17-cr-00125-MC
No. 1:18-cv-01678-MC

**OPINION & ORDER**

_____

McSHANE, District Judge.

The matter comes before the Court on Defendant Nathanael James Young's Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 43. The Court concludes that three of Defendant's predicate convictions do not qualify as serious drug offenses under the Armed Career Criminal Act ("ACCA") and that Defendant's former counsel was ineffective for failing to argue against the application of the ACCA's mandatory minimum sentence. Defendant's motion under § 2255 is therefore GRANTED. Defendant's sentence is VACATED and Defendant shall be transported for resentencing.

## BACKGROUND

On July 6, 2017, Defendant Nathaneal James Young was charged by superseding indictment with a single count of Felon in Possession of a Firearm and single count of Unlawful Possession of a Stolen Firearm. ECF No. 14. The superseding indictment alleged that Young had at least three prior convictions for drug trafficking offenses and was subject to the penalties

established by the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). Young had the following relevant prior convictions in Oregon state court:

(1) A 2016 conviction for Unlawful Delivery of Methamphetamine in Coos County Circuit Court;

(2) A 2012 conviction for Unlawful Delivery of Methamphetamine in Josephine County Circuit Court;

(3) A second 2012 conviction for Unlawful Delivery of Methamphetamine in Josephine County Circuit Court;

(4) A 2004 conviction for Possession of a Precursor Substance with Intent to Manufacture a Controlled Substance in Josephine County Circuit Court; and

(5) A 1999 conviction for Conspiracy to Deliver Marijuana in Curry County Circuit Court.

On July 17, 2017, Young appeared before Magistrate Judge Clarke and pleaded guilty to Felon in Possession of a Firearm pursuant to a plea agreement. ECF Nos. 21, 22, 23, 24. Young acknowledged that the Government would seek an enhanced sentence of 180 months under the ACCA based on his prior felony drug offenses. In exchange, the Government agreed to dismiss the charge of Unlawful Possession of a Stolen Firearm. Young was also facing state charges in Coos County Circuit Court. As part of the plea agreement, the state prosecutor agreed to recommend a sentence of 36 months to run concurrent to Young's federal sentence. Judge Clarke accepted Young's plea, ordered that a presentence report ("PSR") be prepared, and then referred the matter to this Court for sentencing.

The PSR found that Young's total offense level was 30 with a criminal history category of VI, which yielded an advisory guidelines range of 168 to 210 months. The PSR also found that

Young was subject to the statutory mandatory minimum sentence under the ACCA, which yielded an adjusted guidelines range of 180 to 210 months.

At the time of sentencing, Young was represented by attorney Robert Stone. During the sentencing hearing, Stone advised the Court that Young did not object to the application of the ACCA mandatory minimum sentence. ECF No. 39 (Transcript of Sentencing Hearing).

On November 16, 2017, this Court sentenced Young to 180 months to be served concurrent with the Coos County Circuit Court sentence, followed by five years of supervised release. As part of that sentence, this Court found that Young was subject to the ACCA mandatory minimum sentence.

On December 1, 2017, Young filed a Notice of Appeal, which he voluntarily dismissed in March 2018. ECF Nos. 34, 42. This motion followed.

## LEGAL STANDARDS

Under 28 U.S.C. § 2255, a federal prisoner in custody under sentence may move the court that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a).

To warrant relief, a petitioner must demonstrate that the error of constitutional magnitude had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").

**DISCUSSION**

Young contends that his convictions for Unlawful Delivery of Methamphetamine do not qualify as serious drug offenses under the ACCA and that if those convictions were removed from consideration, he no longer qualifies as an armed career criminal. As such, Young contends that his ACCA sentence exceeds the maximum authorized by law. Young further alleges that his trial attorney, Robert Stone, was ineffective for failing to challenge the application of the ACCA mandatory minimum sentence.

## I.      Serious Drug Offenses and the ACCA

Federal law generally prohibits individuals convicted of felonies from possessing firearms. 18 U.S.C. § 922(g). Under ordinary circumstances, ten years is the maximum term of imprisonment for a violation of § 922(g). 18 U.S.C. § 924(a)(2). However, if an individual with three previous convictions for a "violent felony or a serious drug offense" violates § 922(g), the ACCA mandates a sentence of at least fifteen years. 18 U.S.C. § 924(e)(1). For the purposes of the ACCA, a "serious drug offense" is an offense under the Controlled Substances Act, the Controlled Substances Import and Export Act, or "chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law," or, as relevant for the present case:

> [A]n offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A).

In assessing whether a prior state conviction qualifies as an ACCA predicate, courts apply a categorical inquiry.

Under that approach, [a] prior conviction qualifies as an ACCA predicate only if, after comparing the elements of the statute forming the basis of the defendant's conviction, with elements of the generic crime—i.e., the offense as commonly understood—the statute's elements are the same as, or narrower than, those of the generic offense. If the elements of the state crime are broader than those of the generic crime, there is no categorical match and, absent application of the modified categorical approach, the state crime cannot serve as a predicate conviction under the ACCA.

*United States v. Franklin*, 904 F.3d 793, 796-97 (9th Cir. 2018) (internal quotation marks and citations omitted, internal alterations normalized).

In applying the categorical approach, courts look to both the text of the state statute and state court cases interpreting the statute. *United States v. Strickland*, 860 F.3d 1224, 1226 (9th Cir. 2017). "State cases that examine the outer contours of the conduct criminalized by the state statute are particularly important because 'we must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized.'" *Id.* at 1226-27 (quoting *Moncrieffe v. Holder*, 569 U.S. 184 (2013)).

In the present case, Young challenges the inclusion of three of his prior convictions, all for Unlawful Delivery of Methamphetamine in violation of ORS 475.890, as serious drug offenses under the ACCA. ORS 475.890(1) provides that, "Except as authorized by ORS 475.005 to 475.285 and 475.752 to 475.980, it is unlawful for any person to deliver methamphetamine."

"Deliver" or "delivery" means "the actual, constructive or attempted transfer, other than by administering or dispensing, from one person to another of a controlled substance, whether or not there is an agency relationship." ORS 475.005(8). This case turns on whether the Oregon definition of "delivery" is broader than the generic federal offense, particularly with respect to Oregon's definition of an "attempted" offense.[1]

---

[1] In *United States v. Parry*, 479 F.3d 722 (9th Cir. 2007) the Ninth Circuit found that Oregon convictions for Unlawful Delivery of a Schedule II Controlled Substance qualified as a "serious drug offense" under the ACCA. The challenge in *Parry*, and so the only issue confronting the court, was whether Oregon delivery convictions were

## A. *Sandoval v. Sessions*

The Ninth Circuit has recently applied the categorical approach to Oregon's general delivery of a controlled substances statute, ORS 475.992(1)(a), in the immigration context. *Sandoval v. Sessions*, 866 F.3d 986 (9th Cir. 2017).[2] In 1998, Sandoval, a lawful permanent resident, was convicted of unlawful delivery of a controlled substance in Oregon state court. *Id.* at 988. He was sentenced to community service and probation and committed no further criminal offenses. *Id.* In 2010, the Government instituted removal proceedings against Sandoval, alleging that his 1998 conviction constituted an aggravated felony. *Id.*

In the immigration context, aggravated felonies include "drug trafficking crimes," which, like "serious drug offenses" under the ACCA, are considered by reference to the Controlled Substances Act through the categorical approach. *Sandoval*, 866 F.3d at 989. The Controlled Substances Act defines "deliver" or "delivery" to mean "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship." 21 U.S.C. § 802(8).

Consistent with that statutory definition, the Ninth Circuit held that the "generic" offense for delivery of a controlled substance (heroin, in Sandoval's case) required the following elements: (1) knowing or intentional; (2) delivery, attempted delivery, conspiracy to deliver, or possession with intent to deliver; (3) of a controlled substance. *Sandoval*, 866 F.3d at 990. Critically, the generic offense "may not be accomplished by merely soliciting delivery—*i.e.*, offering delivery" of the controlled substance. *Id.*

---

punishable by up to ten or more years imprisonment under 28 U.S.C. § 924(e)(2)(A)(ii). *Parry* did not address whether the underlying convictions were categorically overbroad as to delivery. *See United States v. Ernst*, 293 F. Supp.3d 1242, 1246 (9th Cir. 2017) (so noting).

[2] As noted in *Sandoval v. Sessions*, 866 F.3d 986, 988 n.1 (9th Cir. 2017), ORS 475.992 was subsequently renumbered as ORS 475.752. The statute provides that, except as authorized, "it is unlawful for any person to manufacture or deliver a controlled substance." ORS 475.752(1).

Under Oregon law, however, mere solicitation of delivery of a controlled substance constitutes a "substantial step" towards committing the offense. *Sandoval*, 866 F.3d at 990.[3] "And, taking a substantial step toward committing the crime of attempted delivery by solicitation 'constitutes delivery' in Oregon." *Id.* (quoting *State v. Sargent*, 110 Or. App. 194, 197-98 (1991)). Because Oregon's definition of "delivery" includes solicitation within the meaning of "attempt," the Ninth Circuit concluded that it was not a categorical match for the generic offense of delivery of a controlled substance. *Id.* at 993.[4] Accordingly, the Ninth Circuit found that Sandoval had not been convicted of an aggravated felony. *Id.* at 994.

## B. ACCA

In *Sandoval*, the Ninth Circuit was not confronted with, and so did not address, whether Oregon's definition of delivery is a categorical match for purposes of the ACCA. The Government contends that a "serious drug offense" under the ACCA is substantially different from the aggravated felony standard discussed in *Sandoval*. The Government urges the Court to adopt an expansive definition of offenses "involving" the delivery of controlled substances. 18 U.S.C. § 924(e)(2)(A)(ii) (defining a serious drug offense as "an offense under State law, *involving* manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . .") (emphasis added).

---

[3] In *Sandoval*, the court considered a 1985 Oregon appellate court decision, *State v. Self*, 75 Or. App. 230 (1985), in which Self was convicted of "solicitation of attempted delivery of an illegal substance" based on jailhouse calls in which he suggested that, if Self's acquaintance helped a third party with bail money, the third party would help the acquaintance obtain cocaine in California. *Self*, 75 Or. App. at 232-33. As the *Sandoval* court noted, the conviction was sustained despite the fact that Self did not possess or even offer to deliver cocaine; there was no evidence that the third party was willing to help the acquaintance get cocaine; and no agreement was ever actually reached. *Sandoval*, 866 F.3d at 990-91. In *State v. Sargent*, 110 Or. App. 194 (1991), the Oregon Court of Appeals re-affirmed the holding of *Self*, finding that solicitation was enough to sustain a conviction for delivery and "it is possible to commit the crime of delivery without having a possessory interest in the controlled substance." *Id.* at 199.

[4] The Ninth Circuit also concluded that Oregon's delivery of a controlled substance statute did not qualify as an aggravated felony under the modified categorial approach because it was not divisible with respect to whether an "attempt" is accomplished by solicitation. *Sandoval*, 866 F.3d at 994.

A similar argument has been recently considered and rejected by the Ninth Circuit in *United States v. Franklin*, 904 F.3d 793 (9th Cir. 2018). In that case, Franklin was convicted of Felon in Possession of a Firearm in federal court. Franklin had a number of prior Washington state court convictions for Unlawful Delivery of a Controlled Substance, Wash. Rev. Code § 69.50.401. *Id.* at 796. The district court found that Franklin's delivery convictions qualified as "serious drug offenses" and imposed the ACCA mandatory minimum sentence of fifteen years. *Id.* The Ninth Circuit had already determined, in the context of the Immigration and Nationality Act ("INA"), that the scope of Washington's accomplice liability statute rendered the state's drug trafficking statutes categorically overbroad with respect to their federal drug trafficking equivalents. *Id.* at 797 (citing *United States v. Valdivia-Flores*, 876 F.3d 1201, 1210 (9th Cir. 2017)).

In *Franklin*, the Ninth Circuit was confronted with the question of whether there was any meaningful difference between the "serious drug offense" clause of the ACCA and INA's "illicit trafficking" clause discussed in *Valdivia-Flores* for purposes of the categorical approach. *Franklin*, 904 F.3d at 798. Among other arguments, the Government contended in *Franklin*, as in the present case, that the inclusion of the word "involving" in the ACCA's definition of "serious drug offense" substantially broadened the scope of the statute and distinguished the categorical inquiry under the ACCA from a similar analysis performed under federal immigration statutes. *Id.* at 800-01. The Government argued that, in the context of the ACCA, "involving" should be understood to mean "relating to" or "connected with" the manufacture, distribution, or possession of a controlled substance. *Id.* at 801. The Ninth Circuit rejected that interpretation, holding instead to a narrow definition of "involving" as "including (something) as a necessary part or result." *Id.* (internal quotation marks and citation omitted, alteration normalized). As such, the *Franklin* court

held, the prior delivery convictions are subject to the same categorical analysis under the ACCA and under the INA. *Id.* at 802.

Although *Franklin* and *Valdivia-Flores* applied the categorical analysis with respect to accomplice liability under Washington's drug delivery statutes, rather than the scope of "attempted" delivery of a controlled substance under Oregon law, the similarity to *Sandoval* is obvious and instructive.

The holding of *Franklin* is also consistent with recent decisions by the courts of this District applying *Sandoval* to Oregon drug delivery convictions. In *Ernst v. United States*, 293 F. Supp.3d 1242 (D. Or. 2017), *reconsideration denied*, 291 F. Supp.3d 1190 (D. Or. 2018), Judge Aiken sentenced the defendant to fifteen years under the ACCA because of his prior convictions for delivery of a controlled substances, which were found to be serious drug offenses. *Id.* at 1243. Ernst unsuccessfully sought relief via direct appeal before filing a collateral challenge under § 2255. *Id.* at 1243-44. Judge Aiken found that *Sandoval*, while not dispositive, provided important guidance concerning the reach and scope of Oregon's drug delivery statutes under the categorical approach. *Id.* at 1248-49. Judge Aiken determined that a more restrictive definition of "involving" should be applied when considering whether drug offenses fall within the ACCA, a conclusion that was recently confirmed by *Franklin*. *Id.* at 1247-50. As in *Sandoval*, Judge Aiken found that Oregon law permits conviction for delivery based on an attempt, which can in turn be sustained by mere solicitation. *Id.* at 1249-50. As a consequence, Judge Aiken held that a conviction for delivery of a controlled substance was not a serious drug offense under the ACCA. *Id.* at 1250.

In *McCullen v. Ives*, No. 3:17-cv-1260-JE, 2018 WL 2164867 (D. Or. May 10, 2018), Judge

Mosman followed the reasoning of *Ernst* and granted the defendant's habeas petition.[5]

In the present case, ORS 475.890 incorporates the same ORS 475.005(8) definition of

"deliver" as the former ORS 475.992(1) discussed in *Sandoval*. The Court finds the reasoning of

*Ernst* and *McCullen* persuasive.[6] Consistent with those prior decisions, the Court concludes that

Oregon's delivery of a controlled substance statutes permit conviction based on mere solicitation.

Consistent with *Franklin*, the word "involving," as used in the ACCA's definition of a "serious

drug offense," must be interpreted narrowly. Given such a reading, a state statute is subjected to

the same categorical analysis whether it is considered under the ACCA's definition of a "serious

drug offense" or the immigration statute considered in *Sandoval*. Accordingly, the Court

concludes that Oregon's delivery of a controlled substance statute is categorically overbroad for

purposes of the ACCA.[7] As such, the Court concludes that Young's convictions for Unlawful

Delivery of Methamphetamine in violation of ORS 475.890 do not qualify as predicate convictions

under the ACCA. When those convictions are eliminated from consideration, Young does not

have the predicate convictions necessary to sustain a fifteen-year sentence under the ACCA.[8]

---

[5] Judge Mosman's written opinion memorializes but does not describe his oral ruling in *McCullen v. Ives*, 3:17-cv-01260-JE. The substantive ruling is available in the transcript of oral argument, which can be found in the electronic docket for 3:17-cv-01260-JE, at ECF No. 25.

[6] The Government has cited and the Court has considered three out-of-circuit decisions which reached contrary conclusions: *United States v. Vickers*, 540 F.3d 356, 363-66 (5th Cir. 2008); *United States v. Bynum*, 669 F.3d 880, 884-88 (8th Cir. 2012); and *United States v. Whindleton*, 797 F.3d 105, 108-111 (1st Cir. 2015). The persuasive value of those out-of-circuit decisions, particularly with respect to the scope of "involving" under the ACCA, has been substantially undermined by the Ninth Circuit's decision in *Franklin*.

[7] Neither party has advanced any argument concerning the divisibility of the relevant statutes and so the Court declines to consider the application of the modified categorical approach. As previously noted, the Ninth Circuit has already concluded that the former ORS 475.992(1) is indivisible with respect to whether an attempted delivery may be accomplished by solicitation. *Sandoval*, 866 F.3d at 994.

[8] In a footnote of his original motion, Young argues that his convictions do not qualify as ACCA predicates because Oregon's sentencing laws prohibit the imposition of a ten-year prison sentence. Def. Mot. 7 n.1. Although this argument was contrary to established precedent at the time, it has since been vindicated by the Ninth Circuit's recent ruling in *United States v. Valencia-Mendoza*, 912 F.3d 1215 (9th Cir. 2019) (holding that courts must consider both a crime's statutory elements and sentencing factors when determining whether an offense is "punishable" by a certain term of imprisonment). However, as this motion can be resolved on the grounds actually litigated by the parties, any additional briefing on this issue would only serve to delay granting Young the relief he seeks.

## II.     Ineffective Assistance of Counsel

Young contends that his trial counsel, Robert Stone, was ineffective for failing to advance an objection to the imposition an ACCA sentence based on *Sandoval* and *Ernst*. Courts use a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel. *Premo v. Moore*, 562 U.S. 115, 121 (2011). Under this test, a defendant must prove that counsel's assistance was deficient and that the deficient performance prejudiced the defense. *Id.*

To prove the deficiency of counsel's performance, the defendant must show counsel made errors so serious that his "'representation fell below an objective standard of reasonableness'" under prevailing professional norms. *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688.

In assessing whether counsel's performance was deficient, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). Ultimately, the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting *Strickland*,

466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

In this case, Stone has submitted a declaration in support of Young's § 2255 motion. ECF No. 44. In his declaration, Stone affirms that he was aware of the *Sandoval* decision at the time of sentencing and advised Young that, while *Sandoval* could be helpful in challenging an ACCA conviction, it was "undecided and uncertain." Stone Decl. Stone was initially convinced that the ACCA's definition of a "serious drug offense" was broader than the immigration statute at issue in *Sandoval*, but that Stone became less certain of that conclusion as the time for sentencing neared. *Id.* Before sentencing, Stone affirms that he encouraged Young to explore the possibility of challenging his ACCA eligibility with post-conviction counsel. *Id.*

The *Ernst* decision, discussed in the preceding section, was issued three days before Young was to be sentenced. Stone Decl. With respect to that decision, Stone affirms:

> I was not aware of the decision in *Ernst* before Mr. Young's sentencing, and I should have been. Had I been aware of the decision in *Ernst*, I would have advised Mr. Young to withdraw his guilty plea. I already had questioned the soundness of my advice to Mr. Young to accept the ACCA agreement, and the decision in *Ernst* would certainly have caused me to change my advice to Mr. Young. I would have advised him to renegotiate his sentence with the United States and, if that had not been successful, would have litigated whether Mr. Young's prior convictions could serve as predicates under the ACCA. . . . I believe that I made an unreasonable error in representing Mr. Young. I should have challenged the use of his prior convictions as predicates under the ACCA. That was especially true after the decision in *Ernst*. Had I challenged the use of those convictions as predicates under the ACCA, I believe that Mr. Young's sentence would have been considerably shorter than the 180-month sentence imposed. My failure to challenge the convictions was error, and not the result of strategy.

*Id.*

Although the desire for a global resolution of both state and federal offenses was a primary motivator in Stone's negotiation of the plea deal, Stone affirms that he would still have recommended challenging the application of the ACCA, had he been aware of *Ernst* at the time of sentencing. Stone Decl. If Stone had successfully argued against the imposition of the ACCA's mandatory minimum sentence, Young would have been sentenced to fewer total months of incarceration, even in the unlikely circumstance that the state court imposed a consecutive sentence. *Id.*

On this record, and giving particular consideration to Stone's declaration, the Court concludes that Stone was ineffective for failing to challenge the imposition of the ACCA mandatory minimum based on *Ernst* and *Sandoval*. For the reasons discussed in the preceding section, the Court concludes that Young has made a sufficient showing of prejudice. Accordingly, the Court GRANTS Young's motion under 28 U.S.C. § 2255.

## CONCLUSION

For the reasons set forth above, Defendant's Motion under 28 U.S.C. § 2255, ECF No. 43, is GRANTED. Defendant's sentence is hereby VACATED and Defendant is ordered to be transported to the District of Oregon for resentencing. The courtroom deputy will contact the parties to arrange an appropriate date for resentencing.

It is so ORDERED and DATED this 30th day of April, 2019.


s/Michael J. McShane
MICHAEL McSHANE
United States District Judge